UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                        Plaintiff,

        v.

ESTATE OF MARY J. JACOBSON, and
UNKNOWN HEIRS OF MARY J. JACOBSON
  Dec's (DOD 10/15/2022),

                        Defendants.

_____

**REPORT
and
RECOMMENDATION**

**24-CV-939-JLS(LGF)**

APPEARANCES:      THE LAW OFFICES OF ROBERT A. SCHUERGER
                      CO., LPA
                      Attorneys for Plaintiffs
                      THOMAS SOOY, of Counsel
                      1001 Kingsmill Parkway
                      COLUMBUS, OHIO  43229

## JURISDICTION

This case was referred to the undersigned by Honorable John L. Sinatra, Jr. on July 25, 2025, for all pretrial matters including preparation of a report and recommendation on dispositive motions. (Dkt. 11).  The matter is presently before the court on Plaintiff's Motion for Judgment of Foreclosure and Sale (Dkt. 10).

## BACKGROUND

On September 30, 2024, Plaintiff United States of America ("Plaintiff") commenced this action pursuant to Article 13 of the New York Real Property Actions and Proceedings Law ("N.Y. RPAPL"), by filing the Complaint with exhibits A through I (Dkts. 1-1 through 1-10) ("Complaint Exh(s). __"), seeking to foreclose on two

mortgages encumbering the premises known as 4373 East Frontier Drive, Blasdell, New York ("the Subject Property"). The mortgages were made by one Mary J. Jacobson ("Jacobson"). The Complaint names as Defendants the "Estate of Mary J. Jacobson, c/o Michael J. Jacobson, 4373 E. Frontier Drive, Blasdell, NY 14219," ("the Estate") and Unknown Heirs of Mary J. Jacobson, Dec'd (DOD 10/15/2022) ("Unknown Heirs") (together, "Defendants"). According to a Summons returned executed filed on December 27, 2024 (Dkt. 7) ("Return of Service"), service was made on December 26, 2024, by the U.S. Marshals on "Estate of Mary J. Jacobson c/o Michael Jacobson" by posting a copy of the Summons and Complaint on the door to the Subject Property. To date, no Defendant has answered or otherwise moved against the Complaint and on July 10, 2025, at Plaintiff's request (Dkt. 8), default was entered against the Estate (Dkt. 9).

On July 24, 2025, Plaintiff filed the instant motion seeking default judgment of foreclosure and sale (Dkt. 10) ("Plaintiff's Motion"), attaching the Affidavit [of Thomas J. Sooy, Esq.][1] for Judgment of Foreclosure and Sale (Dkt. 10-1) ("Sooy Affidavit"), and exhibits A through O ("Motion Exh(s). __") (Dkts. 10-2 through 10-16). To date, no Defendant has responded in opposition to Plaintiff's Motion. Oral argument was deemed unnecessary,

Based on the following, Plaintiff's Motion should be DENIED without prejudice.

---

[1] Unless otherwise indicated, bracketed material has been added.

**FACTS**[2]

The Complaint alleges that on June 11, 2009, one Mary J. Jacobson ("Jacobson" or "Borrower"), executed the Adjustable Rate Note (Home Equity Conversion) ("First Note"),[3] promising to pay the lender, M&T Bank ("M&T" or "Lender"), all loan advances up to a maximum of $ 144,000 plus interest at the annual interest rate of 3.017% in specified monthly installments.  Complaint ¶ 2.  As security for the First Note's repayment, Jacobson also executed on June 11, 2009, a Reverse Mortgage (Home Equity Conversion) ("First Mortgage"),[4] and was assigned from M&T Bank to Sun West Mortgage Company, Inc. ("Sun West") ("First Assignment").[5]   The First Mortgage was recorded on June 16, 2009 in the Erie County Clerk's Office.  On September 21, 2009, the First Assignment was recorded in the Erie County Clerk's Office.  On April 29, 2015, the First Mortgage was assigned from Sun West to Reverse Mortgage Funding, LLC ("RMF") ("Second Assignment"),[6] and on August 18, 2015, the Second Assignment was recorded in the Erie County Clerk's Office.  On May 4, 2018, the First Mortgage was assigned from RMF to the United States Secretary of Housing and Urban Development ("HUD") ("Third Assignment"),[7] which, on June 11, 2018, was recorded in the Erie County Clerk's Office.

---

[2] The Facts are taken from the pleadings and motion papers filed in this action.

[3] Copies of the First Note are filed as Dkts. 1-2 and 10-2.

[4] Copies of the First Mortgage are filed as Dkts. 1-3 and 10-3.

[5] Copies of the First Assignment are filed as Dkts. 1-4 and 10-4.

[6] Copies of the Second Assignment are filed as Dkts. 1-5 and 10-5.

[7] Copies of the Third Assignment are filed as Dkts. 1-6 and 10-6.

The First Note provides that

Because Borrower will be required to repay amounts which the [HUD] Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of he National Housing Act and the Loan Agreement, the [HUD] Secretary has required Borrower to grant a Second Note to the [HUD] Secretary.

First Note ¶ 11(A).

Accordingly, as required by the First Note, First Note ¶ 11(A), on June 11, 2009, Jacobson also executed the Adjustable Rate Second Note (Home Equity Conversion) ("Second Note"),[8] promising to pay the lender, the Secretary of HUD ("HUD"), all loan advances up to a maximum of $ 144,000 plus interest at the annual interest rate of 3.017% in specified monthly installments.  Complaint ¶ 11.  As security for the Second Note's repayment, Jacobson also executed on June 11, 2009, a Second Reverse Mortgage (Home Equity Conversion) ("Second Mortgage").[9]  With the Third Assignment on May 4, 2018, HUD became the owner and holder of the First and Second Notes, and the First and Second Mortgages.

Plaintiff, believing Jacobson died on October 15, 2022, and that Jacobson was the sole Borrower, determined the Subject Property is not the principal residence of a surviving Borrower, the Mortgages are in default, and elected to accelerate the security instrument obligation, *i.e.*, call the unpaid loan balance or "debt" under the First and Second Notes due and payable in full.  In furtherance of collecting the debt, Plaintiff mailed to the "Estate of Mary J. Jacobson" a letter dated February 26, 2024, advising of Plaintiff's intention to foreclose and accelerate the debt because the First and Second Mortgages (together, "the Mortgages") were in default status based on the Borrower's

---

[8] Copies of the Second Note are filed as Dkts. 1-7 and 10-7.

[9] Copies of the Second Mortgage are filed as Dkts. 1-8 and 10-8.

death with the Subject Property not being the principal residence of at least one surviving Borrower.  Dkt. 10-9 ("Acceleration Letter").  The Acceleration Letter advised that foreclosure could be avoided if one of four actions were taken, including (1) correcting the matter which resulted in the Security Instrument coming due and payable; (2) paying the balance of the debt, calculated as $ 131,989.49, in full by March 27, 2024; (3) selling the Subject Property for the lesser of the unpaid debt or 95% of the Subject Property's appraised value and applying the net sale proceeds to the debt; or (4) providing the HUD Secretary with a deed in lieu of foreclosure.  Acceleration Letter at 2 (Dkt. 10-9 at 3).  The Acceleration Letter further advised that if the default was not cured within thirty days from its receipt, foreclosure proceedings would commence.  *Id*.

In the absence of any timely corrective action, Plaintiff then commenced the instant action to recover the debt due and owing to HUD, an amount Plaintiff calculated as of September 30, 2024 as $ 138,067.72, as follows:

| | |
|---|---|
| Unpaid Principal: | $ 64,819.14 |
| Unpaid Interest: | $ 58,816.43 |
| Contractual Service Charge: | $  5,520.00 |
| Mortgage Insurance Premium: | $  8,912.15 |

Statement of Account (Dkts. 1-10 and 10-10).[10]

Plaintiff also seeks to collect additional interest accruing until the sale of the property as well as any advances necessary to protect and secure the Subject Property including

---

[10] The "Statement of Account" is a document generated by HUD and delineated as "form HUD-698" listing the total amounts due and owing on the Notes for unpaid principal, unpaid interest, contractual service charge, and mortgage insurance premium as of September 25, 2024.  The Statement of Account does not provide any further breakdown of the listed amounts nor any other information substantiating the amounts listed on the document such as a loan servicing spreadsheet showing the amounts advanced as Loan Advances, accrued interest, and any payments made by the Borrower or the Lender to maintain the property such as property taxes and homeowner's insurance premiums.

property taxes, hazard insurance, water and sewer charges, and other municipal
assessments.

## DISCUSSION

### 1.    Reverse Mortgage

Preliminarily, to assist the reader, in the instant case, the First and Second Notes
("the Notes"), are home equity conversion loans in which the Lender advances money
to the Borrower, either in a lump sum or as periodically withdrawn by the Borrower, with
no monthly payments due until one of several events occur including, for example, the
death of the Borrower(s) or the sale of the property.  Dkt. 1-2 ¶¶ 2, 7; Dkt.1-7 ¶¶ 2, 7.
The mortgage instruments securing such notes are referred to as "reverse mortgages."
Dkt. 1-3 at 1; Dkt. 1-8 at 1.  The terms of both Notes and Mortgages are essentially
identical.[11]  In particular, both Notes provide for the Lender to advance to the Borrower
"Loan Advances" up to a maximum principal of $ 140,000.[12]  *Id*.  Interest is charged on
the Loan Advances and unpaid interest at the beginning interest rate of 3.071% per
annum, which is adjustable on the first day of each succeeding month in accordance
with the London Interbank Offered Rate ("LIBOR").  Dkt. 1-2 ¶¶ 2, 5; Dkt. 1-7 ¶¶ 2, 5.
The adjustable interest rate cannot increase nor decrease by more than two percentage
points (2 %) per year, or five percentage points (5 %) over the life of the loan.  *Id*.

---

[11] The Second Note and Mortgage made between the Borrower and HUD ensures that the Borrower can
continue to receive Loan Advances in accordance with the First Note and Mortgage if the Lender
becomes incapable of making such advances or if the debt's balance exceeds the property value.  *See*
HUD's Home Equity Conversion Mortgage Handbook, *available at* www.Hud.gov/hudclips/
handbooks/housing-4235-1 at ¶ 1.3.  The Second Note and Mortgage thus act as insurance for the First
Note and Mortgage.

[12] The court notes that here it is not clear from the record whether all the moneys advanced to the
Borrower were advanced under the First Note, or under both the First and Second Notes.

Although not prohibited, the Borrower is never required to make any payments on the outstanding principal balance or interest; instead, the full amount of the unpaid debt, including the Loan Advances, the unpaid interest, and such other charges as mortgage servicing charge and mortgage insurance premiums ("MIP"), is due upon the Borrower's death, the sale of the Property, the cessation of the use of the Property as the Borrower's primary residence, or the Borrower's failure to perform some obligation under the note.[13]  Dkt. 1-2 ¶¶ 6-7; Dkt. 1-7 ¶¶ 6-7.  Unless paid, the amount of interest charged on the unpaid principal balance each month treated as a Loan Advance and is likewise subject to interest.  Dkt. 1-2 ¶¶ 2, 7(C); Dkt. 1-7 ¶¶ 2, 7(C).  The unpaid debt, including the principal balance, interest, and other charges, is due in a lump sum at the time of the borrower's death, sale of the property, or one of the other circumstances described above.  *Id*.  The Notes provide that Lender may only enforce the debt secured by a reverse mortgage through the sale of the property; the Borrower has no personal liability for such debt secured by a reverse mortgage and the Lender is not permitted to obtain a deficiency judgment against the Borrower if the proceeds of the sale of the property are insufficient to satisfy the outstanding debt.  Dkt. 1-2 ¶ 4(C); Dkt. 1-7 ¶ 4(C).

**2.    Motion for Default Judgment**

Plaintiff's motion seeks default judgment of foreclosure and sale of the Subject Property pursuant to Fed. R. Civ. P. Rule 55(b) ("Rule 55___") pertaining to default judgments.  "Rule 55 provides a 'two-step process' for the entry of judgment against a party who fails to defend: first the entry of a default, and second, the entry of a default

---

[13] The court notes that the allegation that Jacobson was to make monthly payments on the applicable Note, Complaint ¶ 2, is not supported by the Note itself which required payment in full only upon the Borrower's death or the sale of the Subject Property.  Note ¶ 7 (Dkt. 1-2 at 3).

judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). The entry of a default pursuant to Rule 55(a), "while establishing liability, 'is not an admission of damages.'" *Id.* (quoting *Finkel v. Romanowicz,* 577 F.3d 79, 83 n. 6 (2d Cir.2009)). It is the second step, entry of a default judgment pursuant to Rule 55(b) that "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides Plaintiff is entitled, to the extent permitted by Rule 54(c)." *Id.*

By failing to answer a complaint or to otherwise oppose foreclosure, a defendant is deemed to have admitted the complaint's factual allegations for entry of a default judgment under Rule 55(b). *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) ("*Greyhound Exhibitgroup*") ("a party's default is deemed to constitute a concession of all well pleaded allegations of liability."). *See Mickalis Pawn Shop, LLC*, 645 F.3d at 128 (a court's entry of default "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff."). Nevertheless, "[a] court's decision to enter a default against defendants does not by definition entitle plaintiffs to an entry of a default judgment. Rather, the court may, on plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 188 (2d Cir. 2015). In other words, "[t]he Court must then determine 'whether the unchallenged facts constitute a legitimate cause of action.' " *Freedom Mortgage Corp. v. Bullock*, 2023 WL 5266343, at * 3 (E.D.N.Y. Aug. 4, 2023) ("*Bullock*") (quoting 10A Charles Alan Wright & Arthur R. Miller, *et al.*, *Federal Practice*

*and Procedure* § 2688.1 (4th ed. 2022) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.")).  Despite a defendant's admitting all well-pleaded facts in the complaint by virtue of default, a district court "need not agree that the alleged facts constitute a valid cause of action," and may decline to enter a default judgment on that ground.  *Mickalis Pawn Shop, LLC*, 645 F.3d at 137.  Significantly, prior to entering default judgment, "a district court is 'required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law.'"  *Id.* (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)).  "[I]t [is] the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012) (collecting cases).  "'A court should not grant a motion for default judgment simply because a plaintiff alleges in a conclusory fashion that a defendant has violated the law.  Instead, the factual allegations in support of default judgment must establish plausible grounds for relief.'"  *SEC v. Bahgat*, 2023 WL 3491733, at * 3 (W.D.N.Y. May 17, 2023 (quoting *SEC v. Dang*, 2021 WL 1550593, at *4 (D. Conn. Apr. 19, 2021)).  Further, "[t]he decision whether to enter default judgment is committed to the district court's discretion . . . ."  *Greathouse v. JHS Sec., Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).

In the instant case, Plaintiff's motion for entry of default filed on July 9, 2025 (Dkt. 8), requested default be entered only as to the "Estate of Mary J. Jacobson," which is

the only Defendant as to whom default was entered on July 10, 2025 (Dkt. 9).  The

court assumes, for the sake of this discussion, that the July 10, 2025 entry of default

pursuant to Rule 55(a) against the Estate satisfied the first step for default judgment as

against the Estate, but because default was never entered against the Unknown Heirs,

default judgment cannot be entered as to the Unknown Heirs who, as discussed below,

Discussion, *infra*, at 12-17, were never served with the Summons and Complaint.[14]  As

further discussed below, Discussion, *infra*, at 17-19, Plaintiff's motion for a default

judgment of foreclosure and sale should be DENIED because Plaintiff has not

established a *prima facie* case for the foreclosure action as to any Defendant.

## 3.    Mortgage Foreclosure

A *prima facie* cause of action for a mortgage foreclosure action under New York

law[15] is comprised of three elements including "'(1) a mortgage, (2) a note, and (3) proof

of default on the note by the mortgagor.'"  *Bullock*, 2023 WL 5266343, at * 5 (citing *CIT*

*Bank, N.A. v. Escobar*, 2017 WL 3614456, at * 4 (E.D.N.Y. June 16, 2017) (further

internal quotation omitted)).  "In a foreclosure action under New York law, 'a plaintiff

establishes a prima facie entitlement to judgment once it submits the mortgage, the

unpaid note and evidence of the default.'"  *Freedom Mortgage Corp. v. Roman*, 2023

---

[14] The failure to serve the Unknown Heirs renders the discussion of Plaintiff's Motion merely academic as to such Defendants.

[15] "A federal court, sitting in diversity jurisdiction, applies the choice-of-law rules of the forum state – here, New York."  *K. Petroleum, Inc. v. Lenape Gathering Corp.*, 2022 WL 4134237, at * 5 n. 4 (W.D.N.Y. Sept. 12, 2022) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Further, when confronted with a choice of law question, New York courts generally look to the law of the jurisdiction that has "the greatest interest in the litigation," as determined by the "facts or contacts which . . . relate to the particular law in conflict."  *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 248 N.E.2d 576, 582 (N.Y. 1969).  When, as here, at dispute is a foreclosure on a mortgage connected to a parcel of real property in New York owned by a New York resident, New York has the greatest interest in the litigation.  *Onewest Bank, N.A. v. Perez*, 2015 WL 12659924, at *5 (E.D.N.Y. July 18, 2015).  Accordingly, the undersigned applies New York law.

WL 9539655, at * 3 (W.D.N.Y. Oct. 31, 2023) ("*Roman*") (quoting *Freedom Mortgage Corp. v. Elmore-Hernandez*, 2019 WL 2779320, at * 3 (E.D.N.Y. May 8, 2019), *report and recommendation adopted* 2019 WL 2775620 (E.D.N.Y. July 2, 2019)), *report and recommendation adopted* 2024 WL 260306 (W.D.N.Y. Jan. 24, 2024).

In the instant case, Plaintiff has produced copies of the First and Second Notes (Dkts. 1-2 and 10-2 (First Note) and 1-7 and 10-7 (Second Note)), and the First and Second Mortgages (Dkts. 1-3 and 10-3 (First Mortgage) and 1-8 and 10-8 (Second Mortgage), thus satisfying the first two elements.  With regard to the third element, proof of default, here, the death of the sole Borrower, Plaintiff relies on the Certificate of Merit Pursuant to CPLR 3012-B (Dkt. 1 at 10-12) ("Certificate of Merit"),[16] in which Plaintiff's attorney, Thomas B. Sooy, Esq. ("Sooy"), states that he

> ha[s] reviewed the facts of this case and reviewed the pertinent documents, including the mortgage, security agreement and note or bond underlying the mortgage executed by defendant, all instruments of assignment (if any), and all other instruments of indebtedness including any modification, extension, and consolidation.

Certificate of Merit ¶ 3.

In the Certificate of Merit, Sooy continues that he consulted with "the representative of plaintiff," one Michael Pompa ("Pompa"), whom Sooy describes as "Mortgage Housing

---

[16] As relevant, N.Y. Civ.Prac.L.&R. 3012-B requires that

> In any residential foreclosure action involving a home loan, as such term is defined in section thirteen hundred four of the real property actions and proceedings law, in which the defendant is a resident of the property which is subject to foreclosure, the complaint shall be accompanied by a certificate, signed by the attorney for the plaintiff, certifying that the attorney has reviewed the facts of the case and that, based on consultation with representatives of the plaintiff identified in the certificate and the attorney's review of pertinent documents, including the mortgage, security agreement and note or bond underlying the mortgage executed by defendant and all instruments of assignment, if any, and any other instrument of indebtedness including any modification, extension, and consolidation, to the best of such attorney's knowledge, information and belief there is a reasonable basis for the commencement of such action and that the plaintiff is currently the creditor entitled to enforce rights under such documents. . . .

N.Y. CPLR 3012-B(a).

Specialist, US Department of Housing and Urban Development."  Certificate of Merit ¶ 4.  Upon reviewing the relevant documents and consulting with Pompa, Sooy certifies that to the best of his "knowledge, information, and belief . . . that there is a reasonable basis for the commencement of this action, and that the plaintiff is the creditor entitled to enforce rights under these documents."  *Id*. ¶ 5.  Plaintiff's supporting papers are deficient for several reasons.

First, "[b]efore addressing the merits of a motion for a default judgment, a district court may in its discretion—and perhaps must—assess the sufficiency of service."  *Bahgat*, 2023 WL 3491733, at *3 (citing *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010) ("[W]e agree with our sister circuits that before a court grants a motion for default judgment, it may first assure itself that it has personal jurisdiction over the defendant."); *Mwani v. bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005) ("[A] court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant.")).  "Indeed, 'when entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'"  *Id*. (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

In the instant case, the record is completely devoid of any reason to believe that Jacobson is, in fact, deceased.  Significantly, there is no copy of any document plausibly supporting Plaintiff's belief that Jacobson is deceased, such as a death certificate or published obituary, nor does Sooy explain that Pompa was aware that Jacobson was deceased, much less how Pompa would have obtained such knowledge.  Although the Complaint alleges Jacobson died on October 15, 2022, after which the

Subject Property was no longer the principal residence of at least one surviving Borrower and thus in default, Complaint ¶ 15, no action was taken to accelerate payment of the debt until the February 26, 2024 Acceleration Letter was sent.  That no response was received to the Acceleration Letter Plaintiff sent to the "Estate of Mary J. Jacobson" also fails to establish that Jacobson is deceased.

Second, even assuming, *arguendo*, that Jacobson is deceased, Plaintiff has not sufficiently demonstrated that it has identified and properly served all necessary defendants to this action as required under New York law.  *See United States v. Battle*, 2022 WL 2437034, at * 1 (W.D.N.Y. July 5, 2022) ("Under New York law, 'heirs of deceased mortgagors" are "[n]ecessary parties to a foreclosure action.'" (quoting *PNC Mortg. v. Morka*, 977 N.Y.S.2d 669 (Sup. Ct. Queens Cnty. 2013) (unpublished table decision) (citing *Salomon Bros. Realty Corp. v. Alvarez*, 802 N.Y.S.2d 705 (2d Dep't 2005)), and citing N.Y. RPAPL § 1311[1] (providing that necessary defendants to a foreclosure action include "[e]very person having an estate or interest in possession, or otherwise, in the property as tenant in fee, for life, by the curtesy, or for years, and every person entitled to the reversion, remainder, or inheritance of the real property, or of any interest therein or undivided share thereof, after the determination of a particular estate therein.").  Here, Plaintiff avers that it "appears" based on the "Return of Summons on file in the office of the Clerk of this Court, the Estate of Mary J. Jacobson was duly served with the Summons and Complaint more than twenty-one days ago."  Sooy Affidavit (Dkt. 10-1) ¶ 20.  According to the Return of Service (Dkt. 7), service was made on December 26, 2024, by the U.S. Marshals on "Estate of Mary J. Jacobson c/o Michael Jacobson" by posting a copy of the Summons and Complaint on the door to the

Subject Property.  There is no indication, however, that Michael Jacobson is the executor or administrator of Jacobson's estate or even Jacobson's heir.  Nor is there any indication in the record that Plaintiff took any steps to identify the others named as Defendants, *i.e.*, "Unknown Heirs of Mary J. Jacobson, Dec'd (DOD 10/15/2022)" ("the Unknown Heirs") or to serve the Unknown Heirs with the Summons and Complaint or the instant Motion for Default Judgment of Foreclosure and Sale.

Although under New York law a legal action or proceeding against a deceased defendant generally requires the plaintiff name as the defendant the personal representative of the decedent's estate, *Wells Fargo Bank, NA v. Ramdin*, 89 N.Y.S.3d 883, 885 (Sup. Ct. Queens Cnty. 2018), the mortgagor's estate is not a necessary party to a mortgage foreclosure action where the mortgagor dies intestate and the mortgagee does not seek a deficiency judgment in which case "'a foreclosure action may be commenced directly against the distributees,' in whom title to the real property automatically vests."  *NRZ Pass-Through Tr. IV v. Tarantola*, 144 N.Y.S.3d 196, 198 (2d Dep't 2021) (quoting *U.S. Bank Trust, N.A. v. Gedeon*, 121 N.Y.S.3d 276, 278 (2d Dep't 2020)).  In the instant case, although Plaintiff is precluded by the terms of the Notes from seeking a deficiency judgment, it is not clear whether the Borrower, if in fact deceased, died intestate.  Nor is there any affidavit made by anyone with knowledge indicating that any search of the records of Erie County Surrogate Court was conducted for any entries pertaining to Mary J. Jacobson.  *See Battle*, 2022 WL 2437034, at *2 n. 2 (affidavit of due diligence averring that two searches of the county's surrogate court records failed to reveal any entries pertaining to the mortgagor was insufficient to establish the mortgagor died intestate where the search results were not submitted).

Accordingly, the court is unable to determine whether the Estate is a necessary party. *Id*. (determining that where the proposed complaint implied, but did not specifically allege, that the mortgagor died intestate, it was not clear to the court whether the estate of the mortgagor was a necessary party to the mortgage foreclosure action, citing *Wells Fargo Bank, N.A. v. Seibold*, 29 N.Y.S.3d 850 (Sup. Ct. Richmond Cnty. 2015) (unpublished table decision) ("Case law has [ ] held that ... a plaintiff's complaint in a mortgage foreclosure action [needs] to contain factual allegations as to whether the deceased mortgagor died testate or intestate and whether a personal representative has been appointed.")).

"'An estate is not a legal entity and any action for or against the estate must be by or against the executor or administrator in his or her representative capacity.'" *Grosso v. Est. of Gershenson*, 822 N.Y.S.2d 150, 150 (2d Dep't 2006) (quoting *100 W. 72nd St. Assocs. v. Murphy,* 545 N.Y.S.2d 901, 904 (New York Cty. 1989)). Assuming Michael Jacobson is the duly appointed executor or administrator of the Estate, "for the court to obtain jurisdiction over the administrator [or executor] of an estate, the administrator must be served as prescribed in [N.Y.] CPLR article 3." *GMAC Mortg. Corp. v. Tuck*, 750 N.Y.S.2d 93, 95 (2d Dep't 2002) (citing *Macomber v. Cipollina,* 641 N.Y.S.2d 64, 66 (2d Dep't 1996)). *See Horseman Antiques, Inc. v. Huch*, 856 N.Y.S.2d 663, 664 (2d Dep't 2008) ("To obtain jurisdiction over the personal representative [of an estate], he or she must be served in accordance with [N.Y.] C.P.L.R. article 3 . . . [and] in the absent of proper service, no personal jurisdiction was acquired over the personal representative . . . ."). Specifically, service upon an executor or administrator of an estate is generally pursuant to N.Y. C.P.L.R. § 308 providing for personal service upon

a natural person.  *See Toiny LLC v. Gill*, 2022 WL 4118520, at * 3 (E.D.N.Y. Sept. 9,

2022) (discussing that personal service on the representative's estate is pursuant to

N.Y. C.P.L.R. 308 pertaining to personal service upon a natural person).

Further, although service upon the unknown heirs may be by publication upon

court order, "'service by publication should be ordered only if service cannot be made by

another prescribed method with due diligence.'"  *Battle*, 2022 WL 2437034, at * 2

(quoting *Caban v. Caban*, 497 N.Y.S.2d 175, 176 (3d Dep't 1986), and *Salomon Bros.*

*Realty Corp. v. Alvarez*, 802 N.Y.S.2d 705, 705 (2d Dep't 2005)).  Instead, "where the

location of missing heirs cannot be identified, a guardian or administrator can be

appointed to accept service."  *Id*.  Where the identities of missing heirs are also

unknown, however, the preferred procedure is pursuant to New York law which provides

that Plaintiff can either request the Surrogate Court of Erie County to appoint a personal

representative of the Borrower's estate who can act on behalf of all known and unknown

heirs to such estate, N.Y. Est. Powers &Trusts Law ("N.Y. EPTL") § 11-3.1 (providing

that "[a]ny action, other than an action for injury to person or property, may be

maintained by and against a personal representative in all cases and in such manner as

such action might have been maintained by or against his decedent.").  Alternatively,

Plaintiff could apply to the Erie County Surrogate Court's Public Administrator for an

administrative proceeding prior to which the Public Administrator would be required to

"conduct a search for all living distributees" of Borrower.  N.Y. Surr. Ct. Pro. Act § 1112

(providing the public administrator of a county is authorized to, *inter alia*, conduct a

search for all living distributees of a decedent).  If no distributees are identified, service

upon a duly appointed guardian or administrator is sufficient.  *United States v. Estate of*

*Lucille Walter*, 2025 WL 3647521, at \*4 (W.D.N.Y. Sept. 23, 2025), *report and recommendation adopted*, 2025 WL 3643404 (W.D.N.Y. Dec. 2, 2025).

Simply put, absent some plausible allegations that Michael Jacobson is the executor or administrator of Jacobson's estate, that there are no heirs with an interest in the Estate requiring service on such heirs, proper service, and thus personal jurisdiction over Defendants, has not been established. *See Estate of Lucille Walter*, 2025 WL 3647521, at \*3 (declining to grant motion for default judgment of foreclosure and sale where the plaintiff failed to establish that unknown heirs had been served with the complaint and the motion). Accordingly, Plaintiff cannot obtain a default judgment as to the Estate, the representative of the Estate, or the Unknown Heirs. *Id*.

Additionally, the amounts Plaintiff seeks as damages in connection with the foreclosure and sale of the Subject Property is not sufficiently established. In support of Plaintiff's Motion, Plaintiff submitted the Sooy Affidavit in which Sooy relies on the Statement of Account showing that as of September 25, 2024, the outstanding balance due on the debt was $ 138,067.72, an amount comprised of $ 64,819.14 principal, $ 58,816.43 interest, $ 5,520 service charge, and $ 8,912.15 mortgage insurance premium, with per diem interest of $ 32.95. Sooy Affidavit ¶ 17 (citing Statement of Account (Dkt. 10-10)). The Sooy Affidavit and the attached Statement of Account fail to establish the amount Plaintiff seeks as damages for the Borrower's debt on the Notes. Without any documentation, such as a spreadsheet prepared by someone with knowledge of the facts containing a loan summary for the subject debt showing payment history, and amounts advanced for real estate taxes, insurance, or repairs, the Sooy Affidavit is mere hearsay which cannot support the third element for a default

judgment of foreclosure. *See JPMorgan Chase Bank, Nat'l Ass'n v. Horsfield*, 211 N.Y.S.3d 429, 432-33 (2d Dept. May 8, 2024) ("*Horsfield*") (where the plaintiff failed to attach the business records upon which the affiant relied in averring as to the date of the borrowers' default under the consolidated note and mortgage and the amount due to the plaintiff, the "factual assertions based upon those records constituted inadmissible hearsay, and her affidavit was insufficient to demonstrate proof of the facts constituting the claim and the amount due"); *National Loan Investors, L.P. v. New Zion Church of the Apostolic Faith, Inc.*, 184 N.Y.S.3d 771, 773 (2d Dept. 2023) ("*New Zion Church*") ("To establish the default, the plaintiff relied on an affidavit from its employee, whose averments regarding [the borrower's] default were based upon his review of unidentified business records. Inasmuch as no business records were attached to, or otherwise incorporated into, the affidavit, these averments constituted inadmissible hearsay lacking in probative value."); *Citibank, N.A. v. Yanling Wu*, 154 N.Y.S.3d 327, 334 (2d Dept. 2021) ("*Yanling Wu*") ("the plaintiff failed to sustain its initial burden of demonstrating that the defendants defaulted in the repayment of the subject note. To establish such default, the plaintiff relied upon an affidavit of a representative of its loan servicer, whose averment regarding the defendants' default was based upon her review of unidentified business records. Inasmuch as no business records were attached to, or otherwise incorporated into, the affidavit, this averment constituted inadmissible hearsay lacking in probative value."). *Compare Roman*, 2023 WL 9539655, at * 3 (concluding affidavit from loan servicer specialist who averred that subject debt was in default after the borrower failed to make payments, along with the attached business records supporting the averments sufficiently established the subject debt was in default);

*OneWest Bank, N.A. v. Aikey*, 2015 WL 1472265, at * 2 (W.D.N.Y. Mar. 31, 2015) ("In the instant case, plaintiff, through admissible evidence, has demonstrated the existence of a valid mortgage and note, and has established that the defendant has defaulted on the note."); *U.S. v. Paugh*, 332 F.Supp.2d 679, 681 (S.D.N.Y. 2004) (finding there was no material issue of fact that the borrower defaulted on the subject debt where the loan servicer submitted an affidavit regarding the missed mortgage payments and attaching a schedule of the payment history showing repeated missed payments for the subject debt). The absence of a spreadsheet or other documentation detailing the loan activity and unpaid amounts sought as damages is even more concerning given Plaintiff's allegations, Complaint ¶¶ 2 and 11, that the Borrower was required to make monthly payments on the principal balance of the loan or debt, which is directly contrary to the terms of both Notes providing that no payment is due until the occurrence of one of several events including, as relevant here, the death of the Borrower with the Subject Property no longer the principal residence of at least one surviving Borrower. First Note ¶ 7; Second Note ¶ 7. In light of the missing documentation supporting the subject debt is in default, Plaintiff may not obtain a default judgment of foreclosure and sale. *See Horsfield*, 211 N.Y.S.3d at 432-33 (denying default judgment where the plaintiff failed to attach the business records upon which the affiant relied in averring as to the date of the borrowers' default); and *New Zion Church,* 184 N.Y.S.3d at 773 (denying default judgment where averments regarding default were based upon affiant's review of unidentified business records that were not attached to the affidavit and thus constituted hearsay); *Yanling Wu*, 154 N.Y.S.3d at 334 (same).

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's Motion (Dkt. 10), should be DENIED without prejudice.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 14, 2026
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and to the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      January 14, 2026
            Buffalo, New York